IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LISA D. BRYAN, | * | |
|    Plaintiff, | * | |
| v. | * | Civil Action No. 1:03-cv-00265-AMD |
| LUCENT TECHNOLOGIES INC., | * | |
|    Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Lucent Technologies Inc. ("Lucent"), through undersigned counsel, does hereby respectfully reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Plaintiff's "Opposition"). In her lengthy Opposition, Plaintiff engages in page after page of speculative argument. Although artfully spun, however, Plaintiff's Opposition essentially misses the forest for the trees. The majority of Plaintiff's claims are time-barred, and the only discrete acts which occurred within the statutory period do not constitute adverse actions cognizable under the law. As a result, without the need for an exhaustive, point-by-point refutation of her Opposition, Plaintiff's Complaint should still be summarily dismissed with prejudice as a matter of law.

    **I.**    **PLAINTIFF'S SEXUAL HARASSMENT CLAIMS ARE TIME-BARRED**

Plaintiff concedes in her Opposition that her claims for sexual harassment are subject to a 300-day limitations period, and that the only two acts at issue that occurred within the limitations period (on or after February 17, 2001) were Plaintiff's "forced" transfer to the government team and her subsequent "forced" resignation. (*Opposition at 32-33*). Plaintiff argues that these two

discreet acts were part of a continuing pattern of unlawful employment practices, and that her sexual harassment claim is therefore saved by the continuing violation theory expressed in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002). In making this argument, however, Plaintiff misconstrues Morgan.

The Morgan decision does not stand for Plaintiff's asserted proposition that allegedly harassing conduct that is otherwise time-barred becomes actionable by virtue of the occurrence of an adverse employment action within the limitations period. Rather, the Supreme Court in Morgan clearly explained that a different analysis applies to a cause of action based upon discreet acts of discrimination versus hostile work environment claims. Discreet acts of discrimination, such as demotion or termination, each constitute separate unlawful practices that must be the subject of a charge within the statutory time frame or be barred by limitations. See Morgan, 536 U.S. at 110-15. The Supreme Court specifically noted that "discreet acts that fall within the statutory time period do not make timely acts that fall outside the time period." Id. at 112. In contrast, hostile work environment claims may be based on conduct that occurred outside the limitations period only if that conduct is "part of the same actionable hostile work environment practice" as the conduct within the limitations period. Id. at 120.

In the present matter, every incident of alleged harassment offered by Plaintiff in support of her hostile work environment claim, and which could therefore be potentially viewed as part of a single pattern of harassment, falls outside the limitations period. In contrast, Plaintiff's requested transfer to the government team and her subsequent voluntary resignation were discreet and separate acts unrelated to her hostile work environment allegations. To the contrary, these two acts were not even of the same nature or character as the alleged harassing activity. Nothing in Morgan suggests that a plaintiff may use an alleged discreet act of discrimination

within the limitations period to save or revive a hostile work environment claim based on incidents all of which occurred outside the limitations period.

Finally, as discussed below, these two acts did not constitute adverse actions cognizable under Title VII. If the act (or acts) allegedly within the limitations period does not even rise to the level of an adverse action, it can hardly serve as the sole basis for Plaintiff's assertion of a continuing violation. Plaintiff's claims for sexual harassment are therefore time-barred and should be summarily dismissed.

II. **PLAINTIFF'S CLAIMS FOR GENDER DISCRIMINATION AND RETALIATION SHOULD BE SUMMARILY DISMISSSED**

In her Opposition, Plaintiff does not dispute the applicability of the McDonnell Douglas framework to the present matter, nor the prima facie requirements for stating a claim of either gender discrimination or retaliation under Title VII. Plaintiff also concedes that, as with her claim for sexual harassment, she must establish that some retaliatory or discriminatory conduct occurred after February 17, 2001 (300 days prior to her EEOC filing) to overcome Lucent's limitations defense. In this respect, Plaintiff relies exclusively upon her alleged "forced" transfer to the government team and her subsequent resignation as adverse actions within the limitations period. When the smoke of Plaintiff's Opposition is cleared, however, it is evident that Plaintiff is utterly unable to establish as a matter of law that she suffered any cognizable adverse action, much less that Lucent's legitimate reasons for its actions were mere pretext for either intentional gender discrimination or retaliation. As a result, summary judgment should be granted to Lucent on Plaintiff's claims of gender discrimination and retaliation.

      **A.**    **Plaintiff's Claims for Retaliation and Gender Discrimination Fail at the Prima Facie Level due to her Inability to Establish a Legally Cognizable Adverse Action**

In her Opposition, Plaintiff agrees with Lucent that, to establish a legally sufficient adverse action under the applicable facts, she must establish that her "forced" transfer followed shortly thereafter by her resignation rise to the level of constructive discharge. Plaintiff also concedes that the basis of a constructive discharge claim is deliberate intent and intolerable work conditions. (*Plaintiff's Opposition at 99; Lucent's Memorandum in support of Summary Judgment ("Memorandum") at 16-17*).

With the standards set, Plaintiff then spends an extensive amount of time in her Opposition arguing that that Mr. Moore's comments created intolerable work conditions, and that her potential removal from compensation and her "forced" transfer to the government team left her with no choice but to resign. In attempting to establish that she was constructively discharged, however, Plaintiff utterly ignores several crucial and undisputed facts:

1. If Mr. Moore or Ms. Worley had wished to "force" Plaintiff out, they could have included her in either of the two downsizings on the Verizon team in February and March of 2001; the undisputed evidence, however, establishes that Plaintiff was not a target of either of these downsizing efforts, and in fact was never once in jeopardy of losing her job during 2001. (*Plaintiff Depo. (Ex. A to Defendant's Memorandum) at 229 lines 3-15; Moore Affidavit (Ex. D to Memorandum) at ¶ 4*).

2. Plaintiff <u>herself</u> requested a transfer to the government team; Mr. Moore approved such transfer, even though he had the authority to refuse Plaintiff's request; and Mr. Moore was in the process of approving a transition compensation plan for Plaintiff which would have made up most, if not all, of Plaintiff's lost commission

>   for at least a year, if not longer. (*Plaintiff Depo. (Ex. A to Defendant's Memorandum) at 305 line 14 - 306 line 3, 308 line 28 - 309 line 5, 319 lines 5-10 and Depo. Ex. 7; Moore Affidavit (Ex. D to Memorandum) at ¶ 6; Loprete Depo. (Ex. E to Memorandum) at 31 lines 11-19*).

Nowhere in her Opposition does Plaintiff directly address these facts. Such failure, however, is nothing if not understandable. How can Plaintiff establish a "deliberate intent" on the part of Mr. Moore to force her to leave Lucent when the undisputed facts reveal that he did not down-size her, or even target her for down-sizing, but instead granted her transfer request when he had the authority to refuse? How can Plaintiff establish objectively intolerable working conditions when Mr. Moore voluntarily approved a transition compensation plan following her transfer from his supervision which would have made up most, if not all, of Plaintiff's lost commission? The answer, of course, is that Plaintiff simply cannot meet these burdens.

It is undisputed that Plaintiff was not downsized like countless numbers of her co-workers; that she was given the very transfer that she requested; and that Mr. Moore was actually trying to ensure that she received a transition compensation plan, even though he was not required to do so. Despite all this, Plaintiff resigned to pursue another potentially more lucrative opportunity at Signal. From an objective standpoint, and based upon the undisputed record evidence before the Court, Plaintiff thus simply cannot establish constructive discharge. See, e.g., Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) ("the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge"). Plaintiff's retaliation and gender discrimination claims therefore fail as a matter of law.

> **B.** **Plaintiff is Unable to Establish that Lucent's Legitimate, Non-Retaliatory and Non-Discriminatory Reasons for its Actions were Mere Pretext for Either Intentional Retaliation or Gender Discrimination**

In her Opposition, Plaintiff posits a fairly novel legal concept: namely, that Lucent has failed to offer any legitimate reasons for its actions because it has merely "den[ied] that the conduct occurred," and that as a result Plaintiff has no obligation to establish pretext. (*Opposition at 44*). Although such a legal position arguably turns the McDonnell Douglas framework on its head, it is not necessary to dwell on the procedural issue given Plaintiff's misstatement of the record. Lucent does indeed have a bona fide legitimate reason for its actions:Plaintiff's own expressed wishes. Plaintiff was transferred to the government team <u>at her own request</u>, and Plaintiff's employment was terminated only because <u>she voluntarily resigned</u>. This seems to be the most basic legitimate reason possible, and Plaintiff therefore still bears the burden of establishing that Lucent's proffered reasons for its actions were not its true reasons, but were a mere pretext for intentional and prohibited retaliation and/or gender discrimination. See Langerman v. Thompson, 155 F.Supp.2d 490, 496 (D.Md. 2001).

In response, Plaintiff offers nothing more than her own subjective belief. In fact, Plaintiff makes this explicit in her Opposition, when she states that she was "forced" to seek a transfer and to ultimately resign because she "<u>believed</u> that her job was in jeopardy." (*Opposition at 19 and 28*) (emphasis added). This type of conclusory and self-serving assertion, however, is simply not sufficient to defeat summary judgment. See Evans v. Technologies Applications & Service Co., 80 F.3d 954, 960 (4th Cir. 1996); Felty v. Graves-Humpheys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Plaintiff has thus woefully failed to meet her burden of establishing pretext, and her claims should therefore be dismissed as a matter of law.

### III.　CONCLUSION

For the foregoing reasons, as well as the reasons contained in Lucent's original Memorandum in Support of its Motion for Summary Judgment, Lucent respectfully requests that its Motion for Summary Judgment be granted and that judgment be entered in favor of Lucent and against Plaintiff as a matter of law.

Respectfully submitted,

/s/
Robert R. Niccolini
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, MD  21202
410-659-4400

Attorney for Defendant Lucent Technologies Inc.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of September, 2003, a copy of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment was electronically filed in this case and was further mailed, first-class, postage prepaid to Paul V. Bennett, Esquire, counsel for Plaintiff, 133 Defense Highway, Suite 209, Annapolis, Maryland 21401.

/s/
Robert R. Niccolini

LAB/387174